1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              EASTERN DISTRICT OF CALIFORNIA

10

11    ASIF M QAZI,

12                    Petitioner,                    No. 2:25-cv-02791-TLN-SCR

13

14          v.                                       **ORDER**

15    SERGIO ALBARRAN, et al.,

16                    Respondents.

17

18          This matter is before the Court on Petitioner Asif M Qazi's ("Petitioner") Motion for a

19    Temporary Restraining Order ("TRO").  (ECF No. 2.)  For the reasons set forth below,

20    Petitioner's motion is GRANTED.

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

                                                    1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a native and citizen of Bandladesh who arrived in the United States when he was six years old.  (ECF No. 2 at 11.)  In November 2016, Petitioner was arrested and detained after a traffic stop.  (*Id.* at 12.)  As soon as Petitioner was released pre-trial, the Department of Homeland Security ("DHS") Immigration and Customs Enforcement ("ICE") detained Petitioner and placed him in removal proceedings.  (*Id.*)  After a few months in detention, Petitioner was granted bond by an immigration judge and released.  (*Id.*)  In early 2020, ICE re-arrested Petitioner and detained him at the Mesa Verde Detention Center.

A a group of ICE detainees at the Mesa Verde Detention Center and the Yuba County Jail filed a proposed habeas class action challenging the conditions of their confinement.  *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 38 (N.D. Cal. 2020).  As a *Zepeda Rivas* class member, Petitioner was released from detention in August 2020, following an individualized assessment of his flight risk and danger to the community.  (ECF No. 2 at 12 (citing *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 40 (N.D. Cal. 2020)).)  The settlement agreement in *Zepeda Rivas*, which took effect on June 9, 2022, provided that, for three years following the effective date of the agreement, ICE could only redetain a released class member if the individual posed a threat to public or national security, or posed a flight risk. (ECF No. 2 at 12.)  In May 2021, ICE enrolled Petitioner in the Intensive Supervision Appearance Program (ISAP) and placed him on an ankle monitor for electronic GPS monitoring.  (*Id.* at 13.)  Petitioner has complied with all ISAP requirements since.  (*Id.*)  Petitioner has an upcoming in-person check-in appointment at ICE's field office in Sacramento on October 3, 2025, at 9:30 a.m.  (*Id.* at 15.)

In 2024, Petitioner completed an apprenticeship and is a certified Field Ironworker and Reinforcing Metal Worker.  (*Id.* at 13–14.)  He is gainfully employed as a Rigger and Signal Person, Forklift Operator, and Supervisor.  (*Id.* at 14.)  Petitioner has full custody of his 14-year-old United States citizen daughter, who suffers from ongoing bouts of severe chest pain that requires emergency care.  (*Id.*)  Petitioner is also the only caretaker of his elderly, United States citizen mother.  (*Id.*)  Petitioner has a pending I-130 family visa petition application before the United States Citizenship and Immigration Services ("USCIS") based on his relationship with his

1  mother.  (*Id.* at 13.)

2      On September 26, 2025, Petitioner filed a petition for writ of habeas corpus.  (ECF No. 1.)

3  On the same day, Petitioner filed a motion for a TRO.  (ECF No. 2.)

4      **II.**    **STANDARD OF LAW**

5      For a TRO, courts consider whether Petitioner has established: "[1] that he is likely to

6  succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary

7  relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public

8  interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a

9  showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d

10  1127, 1135 (9th Cir. 2011).  In evaluating a petitioner's motion, a district court may weigh

11  Petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger

12  showing on the balance of the hardships may support issuing a TRO even where the petitioner

13  shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows

14  that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*

15  Simply put, Petitioner must demonstrate, "that [if] serious questions going to the merits were

16  raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to

17  succeed in a request for a TRO.  *Id.* at 1134–35.

18      **III.**    **ANALYSIS**

19      The Court considers each of the *Winter* elements with respect to Petitioner's Motion for a

20  TRO.

21          A.    <u>Likelihood of Success on the Merits</u>

22      Petitioner argues he is likely to succeed on his claim that he has a protected liberty interest

23  in remaining free and a constitutional right to a pre-deprivation hearing.  (ECF No. 2 at 15.)

24  According to Petitioner, the Due Process Clause constrains Respondents' power to redetain a

25  noncitizen released on bond without first providing a hearing before a neutral adjudicator where

26  the government justifies the necessity of his redetention by clear and convincing evidence.  (*Id.* at

27  16.)

28      The Fifth Amendment Due Process Clause prohibits government deprivation of an

individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings, including deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003). Courts analyze procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). The Court considers each step in turn.

### i.      Liberty Interest

To determine whether conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025) (referencing *Morrissey v. Brewer*, 409 U.S. 471, 482 (1972)). The Court agrees with Petitioner. Irrespective of the circumstances of his release, he has developed "enduring attachments of normal life" for the past five years by serving as the primary caretaker for both his minor daughter and his ailing elderly mother and maintaining gainful employment. (ECF No. 2 at 18 (citing *Morrissey v. Brewer*, 408 U.S. 471, 482–483 (1972)).) The fact that Petitioner was released pursuant to a settlement agreement does not alter the Court's conclusion. Therefore, the Court finds Petitioner has a liberty interest in his conditional release.

### ii.      Procedural Due Process

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To determine such, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the

1    procedures used, and the probable value, if any, of additional or substitute procedural

2    safeguards;" and (3) "the Government's interest, including the function involved and the fiscal

3    and administrative burdens that the additional or substitute procedural requirement would entail."

4    *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

5         As to the first *Eldridge* factor — Petitioner's private interest — as discussed above,

6    Petitioner has been out of custody for five years.  (ECF No. 2 at 17.)  During those years,

7    Petitioner is the sole caretaker for his family and has been gainfully employed as a Certified

8    Rigger and Signal Person, Forklift Operator, and Supervisor.  (*Id.*)  The length of time and the

9    connections Petitioner made with his community during that time create a powerful interest for

10   Petitioner in his continued liberty.  *See Doe v Becerra,* No. 2:25-cv-00647-DJC-DMC, 2025 WL

11   69166, at *5 (E.D. Cal. March 3, 2025).

12        As to the second *Eldridge* factor — the risk of erroneous deprivation — Petitioner argues

13   the risk is high if ICE can unilaterally redetain Petitioner without a hearing before a neutral

14   adjudicator to determine whether his redetention serves a permission purpose, i.e., a material

15   change in circumstances.  (ECF No. 2 at 20.)  The Court finds the risk of erroneous deprivation is

16   considerable.  Petitioner was previously released pursuant to a finding that he was not at risk of

17   fleeing or harming others, and as such, due process prevents him from being redetained except

18   upon a showing of a material change in circumstances.  *Duong v. Kaiser*, Case No. 25-cv-07598-

19   JST, 2025 WL 2689266 (N.D. Cal. Sept. 19, 2025).  Given that Petitioner was previously found

20   to not be a danger or a flight risk, the risk of erroneous deprivation without a hearing is high,

21   particularly here, where Petitioner continues to follow ICE's supervision requirements including

22   routine check-ins and has a pending I-130 family visa petition application.

23        As to the third *Eldridge* factor, Petitioner argues Respondents' interest is low and does not

24   outweigh his private interests.  (ECF No. 2 at 21–22.)  Specifically, Petitioner contends after

25   years of consistent compliance, there is no reason to believe that Petitioner's compliance with

26   ISAP or any other term of his release will suddenly change.  (*Id.* at 22.)  The Court finds the

27   Respondents' interest in placing Petitioner in detention without a hearing is low.  The effort and

28   cost required to provide Petitioner with procedural safeguards is minimal and indeed was

1    previously provided in his case.  Thus, Respondents' burden does not outweigh Petitioner's

2    substantial liberty interest and risk of erroneous depravation.

3        Having found Petitioner has a liberty interest and determined that due process requires

4    Petitioner receive a hearing to determine whether detention is warranted, the Court finds that

5    Petitioner has established a likelihood of success on the merits.

6                        B.    Irreparable Harm

7        Petitioner argues he will suffer irreparable harm were he redetained without

8    constitutionally compliant notice and hearing, in violation of his due process rights.  (*Id*. at 25.)

9    The Court finds Petitioner will suffer irreparable harm in the absence of preliminary injunctive

10    relief.  Petitioner has been out of custody for five years, during which time Petitioner appears to

11    have made meaningful connections with his community.  (*Id.* at 18.)  Here, Petitioner is the sole

12    caretaker for his 14 -year-old United States citizen daughter and elderly mother.  (*Id.* at 14.)  If

13    Petitioner were redetained, his family would be evicted from his home, and his daughter would be

14    put into foster care.  (*Id.*)  The Ninth Circuit has recognized in "concrete terms the irreparable

15    harms imposed on anyone subject to immigration detention . . . [including] the economic burdens

16    imposed on detainees and their families as a result of detention, and the collateral harms to

17    children of detainees whose parents are detained." Hernandez v. Sessions, 872 F.3d 976, 995 (9th

18    Cir. 2017)

19        Despite being released, Petitioner believes he will be redetained without the opportunity to

20    be heard by a neutral adjudicator on whether redetention is warranted.  Absent a review, it

21    appears that Petitioner would remain in custody until final determination of his appeal.  This

22    violation of Petitioner's due process rights is sufficient to satisfy the irreparable harm

23    requirement.  *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal.

24    Mar. 3, 2025).

25                        C.    Balance of Equities and Public Interest

26        As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the

27    balance of the hardships and the public interest merge."  *Nat'l Urban League v. Ross*, 484 F.

28    Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092

1 | (9th Cir. 2014)).

2 |     The Court finds the balance of equities and public interest weighs in Petitioner's favor

3 | given that the Court has found that Petitioner has a strong likelihood of success on the merits

4 | based on his Constitutional claims, Petitioner's irreparable harm and Respondents' lack of harm.

5 |     Therefore, the Court GRANTS Petitioner's Motion for a TRO.  (ECF No. 2.)

6 | **IV.   CONCLUSION**

7 |     In accordance with the above, IT IS HEREBY ORDERED that Petitioner's motion for a

8 | Temporary Restraining Order (ECF No. 2) is GRANTED.  The bond requirement of Federal Rule

9 | of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one.  *See*

10 | *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

11 |     Respondents are hereby RESTRAINED AND ENJOINED from redetaining Petitioner

12 | without notice and a hearing where the Government shall bear the burden of establishing, by clear

13 | and convincing evidence, that Petitioner poses a danger to the community or a risk of flight.  This

14 | Order shall remain in effect until October 13, 2025, at 12:00 p.m.

15 |     Respondents are ordered to show cause before this Court why a preliminary injunction

16 | should not issue requiring Respondents to abide by the injunctions ordered herein.  The hearing

17 | on the order to show cause will be held on Thursday, October 2, 2025, at 2 p.m. in Courtroom 2.

18 | Respondents shall file responsive papers on Wednesday, October 1, 2025, by 12 p.m.

19 |     Petitioner is ordered to serve this Temporary Restraining Order and Order to Show Cause

20 | and all supporting pleadings and papers on Respondents by 5:00 p.m. on September 29, 2025.

21 |     Respondents are hereby notified of their right to apply to the Court for modification or

22 | dissolution of the Temporary Restraining Order on two days' notice or such shorter notice as the

23 | Court may allow.  Fed. R. Civ. P. 65(b).

24 |     IT IS SO ORDERED.

25 | Date: September 29, 2025

26 |

27 |

28 | TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

7