UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIF M QAZI,<br><br>  Petitioner,<br><br>  v.<br><br>SERGIO ALBARRAN, et al.,<br><br>  Respondents. | No. 2:25-cv-02791-TLN-CSK<br><br>**ORDER** |

This matter is before the Court on Petitioner Asif M Qazi's ("Petitioner") Motion for a Temporary Restraining Order ("TRO") filed in Petitioner's habeas corpus case. (ECF No. 2.) The Court granted Petitioner's motion and ordered Respondents Sergio Albarran, Todd M. Lyons, Krisit Noem, and Pamela Bondi ("Respondents") to show cause as to why a preliminary injunction should not issue. (ECF No 7.) Respondents filed a response. (ECF No. 13.) The Court held a hearing on October 2, 2025. (ECF No. 14.) For the reasons set forth below, the Court GRANTS a preliminary injunction.

///
///
///
///

1

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a native and citizen of Bangladesh who arrived in the United States when he was six years old. (ECF No. 2 at 11.) In December 2016, Department of Homeland Security ("DHS") Immigration and Customs Enforcement ("ICE") detained Petitioner and placed him in removal proceedings due to Petitioner's criminal history. (ECF No. 13 at 2.) After a few months in detention, Petitioner was granted bond by an immigration judge and released. (ECF No. 2 at 11.) DHS appealed the bond order, and on October 25, 2017, the Board of Immigration Appeals remanded the matter for further consideration of Petitioner's dangerousness. (ECF No. 13-1 at 99–100.) On remand, the immigration judge's decision to grant bond was affirmed. (ECF 1-3 at 3.)

In early 2020, ICE rearrested Petitioner and detained him at the Mesa Verde Detention Center. A group of ICE detainees at the Mesa Verde Detention Center and the Yuba County Jail filed a proposed habeas class action challenging the conditions of their confinement. *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 38 (N.D. Cal. 2020). As a *Zepeda Rivas* class member, Petitioner was released from detention in August 2020, following an individualized assessment of his flight risk and danger to the community. (ECF No. 2 at 12 (citing *Zepeda Rivas*, 445 F. Supp. 3d at 40).) The settlement agreement in *Zepeda Rivas*, which took effect on June 9, 2022, provided that, for three years following the effective date of the agreement, ICE could only redetain a released class member if the individual posed a threat to public or national security, or posed a flight risk. (ECF No. 2 at 12.)

On February 17, 2021, Petitioner's bail was terminated for violating the conditions of his release. (ECF No. 13-1 at 110.) In May 2021, ICE enrolled Petitioner in the Intensive Supervision Appearance Program (ISAP) and placed him on an ankle monitor for electronic GPS monitoring. (*Id.* at 13.) Since then, Petitioner has consistently complied with all ISAP requirements, including attending all in-person and virtual home and office visits. (ECF 1-3 at 4.) Petitioner checks in with ICE approximately once per month, and a majority of the check-ins are virtual. (*Id.*) On July 18, 2023, Petitioner was taken into ICE custody. (ECF No. 13 at 3.) Due to Petitioner's medical conditions, ICE released Petitioner and placed him back on ISAP. (*Id.*)

In 2024, Petitioner completed an apprenticeship and became a certified Field Ironworker and Reinforcing Metal Worker. (*Id.* at 13–14.) He is gainfully employed as a Rigger and Signal Person, Forklift Operator, and Supervisor. (*Id.* at 14.) Petitioner has full custody of his 14-year-old United States citizen daughter, who suffers from ongoing bouts of severe chest pain that requires emergency care. (*Id.*) Petitioner is also the only caretaker of his elderly, United States citizen mother. (*Id.*) Petitioner has a pending I-130 family visa petition application before the United States Citizenship and Immigration Services ("USCIS") based on his relationship with his mother. (*Id.* at 13.)

On September 26, 2025, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) On the same day, Petitioner filed a motion for a TRO enjoining Respondents from redetaining him without constitutionally-compliant notice and hearing. (ECF No. 2.) On September 29, 2025, the Court granted Petitioner's motion and ordered Respondents to show cause as to why a preliminary injunction should not issue. (ECF No 7.) On October 1, 2025, Respondents filed a response. (ECF No. 13.) On October 2, 2025, the Court held a hearing. (ECF No. 14.)

**II.     STANDARD OF LAW**

A TRO and a preliminary injunction are both extraordinary remedies. In general, "[t]emporary restraining orders are governed by the same standard applicable to preliminary injunctions." *Aiello v. One West Bank*, No. 2:10-cv-0227-GEB-EFB, 2010 WL 406092, at *1 (E.D. Cal. Jan. 29, 2010) (internal citations omitted); *see also* E.D. Cal. L.R. 231(a).

For both a TRO and a preliminary injunction, courts consider whether Petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the petitioner shows that there are "serious questions on the

1 merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and
2 that the injunction is in the public interest." *Id.* Simply put, Petitioner must demonstrate, "that
3 [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ]
4 sharply" in Petitioner's favor in order to succeed in a request for a preliminary injunction. *Id.* at
5 1134–35.

### III. ANALYSIS

Petitioner argues he is entitled to injunctive relief as the *Winter* elements weigh in his favor. (ECF No. 2 at 15.) In opposition, Respondents make two threshold arguments: (1) this Court lacks jurisdiction to review Petitioner's claims and (2) Petitioner's request for injunctive relief improperly seeks the same relief as his habeas petition. (ECF No. 13 at 1, 9–10.) In addition, Respondents argue Petitioner fails to demonstrate he is entitled to injunctive relief. (*Id.*) The Court first addresses Respondents' threshold arguments, followed by a discussion of each of the *Winter* elements.

#### A.     Jurisdiction

Respondents argue 8 U.S.C. §§ 1226(e) ("§ 1226(e)"); 1252(g) ("§ 1252(g)"); and 1252(b)(9) ("§ 1252(b)(9)") deprive this Court of jurisdiction. (ECF No.13 at 5–9.) Specifically, Respondents contend § 1226(e) expressly prohibits judicial review of the Attorney General's discretionary judgment regarding a noncitizen's detention or release. (*Id.* at 5.) Respondents argue, because Petitioner challenges a "non-existent, future revocation of the previous discretionary decision made by the Attorney General to release Petitioner due to health concerns" — and not a mandatory detention scheme — this Court is not authorized to review that decision under § 1226(e). (*Id.*) Similarly, Respondents argue § 1252(g) deprives this Court of jurisdiction to review "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to (1) commence proceedings, (2) adjudicate cases, or (3) execute removal orders against any [noncitizen] under this chapter." (*Id.* (citing 8 U.S.C. § 1252(g)).) Respondents argue Petitioner's claims stem from his detention during removal proceedings, and Petitioner's detention arises from the decision to commence proceedings against him. (*Id.* at 6.) Finally, Respondents argue under § 1252(b)(9), judicial review of all questions of law, including

1  interpretation and application of statutory provisions, arising from any action taken to remove a
2  noncitizen from the United States is only proper before the appropriate federal court of appeals in
3  the form of a petition for review of a final removal order.  (*Id.* at 7.)

4  At the hearing, Petitioner argued §§ 1226(e), 1252(g), and 1252(b)(9) do not strip the
5  Court of jurisdiction to hear Petitioner's claim or grant the relief he seeks.  Petitioner contends he
6  is not challenging the fact Petitioner is in removal proceedings or the Government's statutory
7  authority to place a noncitizen in removal proceedings.  Rather, Petitioner argues his claim is an
8  as-applied constitutional claim challenging detention in violation of the Due Process Clause.
9  Petitioner further argues the statutory provisions do not bar Petitioner's Writ of Habeas Corpus,
10 which is authorized and protected by the Suspension Clause.

11 The Court agrees with Petitioner.  Sections 1226(e), 1252(g), and 1252(b)(9) restrict
12 judicial review of immigration enforcement actions, specifically decisions and processes related
13 to detention, removal or the execution of removal orders.  Here, however, Petitioner's claim is not
14 a challenge to a decision to remove Petitioner or his removal itself.  Indeed, neither have
15 occurred.  Instead, Petitioner's claim is a challenge to the constitutionality of Petitioner's
16 imminent redetention.  Under 28 U.S.C. § 1331, federal district courts have jurisdiction over "all
17 civil actions arising under the Constitution, laws, or treaties of the United States."  As such, the
18 Court has jurisdiction to hear Petitioner's constitutional claims.

19               B.    <u>Same Relief as Habeas Petition</u>

20 Respondents argue a preliminary injunction should not issue because Petitioner seeks the
21 same relief by way of an injunction as in his habeas petition.  (ECF No. 13 at 9.)  At the hearing,
22 Petitioner argued his habeas petition raises substantive due process claims which were not raised
23 in his motion for injunctive relief and the temporary relief he currently seeks is clearly distinct
24 from a final adjudication on the merits of his habeas petition.  Petitioner further argued his motion
25 for injunctive relief seeks to maintain the status quo so that he can continue living life in his
26 community, and despite his efforts to obtain assurances from Respondents that he will not be
27 subject to redetention, Respondents have been unwilling to provide it.

28 The Court agrees with Petitioner.  "[W]hile it may typically be inappropriate to grant

relief via preliminary injunction that constitutes most or all of the final relief sought, there is no mechanism to 'temporarily' halt the deprivation of Petitioner's due process rights while the parties litigate the full merits of Petitioner's habeas petition." *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *3 (E.D. Cal. Mar. 3, 2025). In addition, to protect its own jurisdiction, the Court has authority under the All Writs Act to issue such temporary injunctions as may be necessary. *See F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 604 (1966).

### C. *Winter* Elements

#### i. *Likelihood of Success on the Merits*

Petitioner argues he is likely to succeed on his claim that he has a protected liberty interest in remaining free and a constitutional right to notice and a pre-deprivation hearing. (ECF No. 2 at 15.) According to Petitioner, the Due Process Clause constrains Respondents' power to redetain a noncitizen without first providing a hearing before a neutral adjudicator where the government justifies the necessity of his redetention by clear and convincing evidence. (*Id.* at 16.) Respondents do not directly respond to Petitioner's arguments.[1]

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of

---

[1] Instead, Respondents maintain that Petitioner's due process rights have not been violated as his original detention was proper. (ECF No. 13 at 10.) Respondents' argument, however, wrongly suggests that so long as a noncitizen's original detention is lawful, he cannot suffer subsequent due process violations. Courts have recognized a conditional release can rise to the level of a protected liberty interest. *Morrissey v. Brewer*, 409 U.S. 471, 482 (1972). Any deprivation of that protected liberty interest without process could constitute a due process violation. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As such, once a noncitizen is released from detention, he can suffer due process violations if he is not afforded sufficient process, regardless of whether his original detention was lawful.

Additionally, Respondents argue this Court cannot issue an order prohibiting Petitioner from being redetained without a hearing. (ECF No. 13 at 10 (citing *Phan v. Becerra*, No. 2:25-cv-01757-DC-JDP, 2025 WL 1808702, at *4 (E.D. Cal. June 30, 2025). However, *Pham* does not stand for the proposition that a court cannot issue an order prohibiting a petitioner from being redetained without a hearing. Rather, *Phan* narrowly held that the plain language of 8 C.F.R § 241.13 did not allow the Court to hold the hearing and make factual findings as to whether petitioner's redetention was warranted. The Court declines to extend the holding in *Pham* to reach Respondents' argument.

1  the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)
2  ("[T]he Due Process Clause applies to all "persons" within the United States, including
3  noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These
4  due process rights extend to immigration proceedings, including deportation proceedings. *Id.* at
5  693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003). Courts analyze procedural due process
6  claims in two steps: the first asks whether there exists a protected liberty interest under the Due
7  Process Clause, and the second examines the procedures necessary to ensure any deprivation of
8  that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v.*
9  *Thompson*, 490 U.S. 454, 460 (1989). The Court considers each step in turn.

          *a)*    *Liberty Interest*

11  To determine whether conditional release rises to the level of a protected liberty interest,
12  courts have "compar[ed] the specific conditional release in the case before them with the liberty
13  interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-
14  SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025) (referencing *Morrissey*, 409 U.S. at
15  482). Here, the Court finds Petitioner has a protected liberty interest in his release. Irrespective
16  of the circumstances of his release, Petitioner has developed "enduring attachments of normal
17  life" for the past five years by serving as the primary caretaker for both his minor daughter and
18  his ailing elderly mother and maintaining gainful employment. (ECF No. 2 at 18 (citing
19  *Morrissey v. Brewer*, 408 U.S. 471, 482–483 (1972)).) Notably, at the hearing, Respondents
20  acknowledged and conceded Petitioner's ties in the United States and with his community create
21  an increasing liberty interest.

          *b)*    *Procedural Due Process*

23  Having found a protected liberty interest, the Court examines what process is necessary to
24  ensure any deprivation of that protected liberty interest accords with the Constitution. To
25  determine such, the Court considers three factors: (1) "the private interest that will be affected by
26  the official action;" (2) "the risk of an erroneous deprivation of such interest through the
27  procedures used, and the probable value, if any, of additional or substitute procedural
28  safeguards;" and (3) "the Government's interest, including the function involved and the fiscal

and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

As to the first *Eldridge* factor — Petitioner's private interest — as discussed above, Petitioner has been out of custody for five years. (ECF No. 2 at 17.) During those years, Petitioner is the sole caretaker for his family and has been gainfully employed as a Certified Rigger and Signal Person, Forklift Operator, and Supervisor. (*Id.*) The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty. *See Doe,* 2025 WL 69166, at *5.

As to the second *Eldridge* factor — the risk of erroneous deprivation — Petitioner argues the risk is high if ICE can unilaterally redetain Petitioner without a hearing before a neutral adjudicator to determine whether his redetention serves a permission purpose, i.e., a material change in circumstances. (ECF No. 2 at 20.)

A pre-deprivation hearing before a neutral decisionmaker is "one of the most basic due process protections." *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), abrogated on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). Where the petitioner does not receive a hearing, "the risk of an erroneous deprivation [of liberty] is high" because neither party "has had an opportunity to determine whether there is any valid basis for [the petitioner's] detention." *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *5 (N.D. Cal. July 24, 2025).

Given that Petitioner was previously found to not be a danger or a flight risk, the risk of erroneous deprivation without a hearing is high, particularly here, where Petitioner continues to follow ICE's supervision requirements including routine check-ins and has a pending I-130 family visa petition application.

As to the third *Eldridge* factor, Petitioner argues Respondents' interest is low and does not outweigh his private interests. (ECF No. 2 at 21–22.) Specifically, Petitioner contends after years of consistent compliance, there is no reason to believe that Petitioner's compliance with ISAP or any other term of his release will suddenly change. (*Id.* at 22.) The Court finds the Respondents' interest in placing Petitioner in detention without a hearing is low. The effort and

1  cost required to provide Petitioner with procedural safeguards is minimal and indeed was
2  previously provided in his case.  Thus, Respondents' burden does not outweigh Petitioner's
3  substantial liberty interest and risk of erroneous depravation.
4      Having found Petitioner has a liberty interest and determined that due process requires
5  Petitioner receive a hearing to determine whether detention is warranted, the Court finds that
6  Petitioner has established a likelihood of success on the merits.

       *ii.*      *Irreparable Harm*

8  Petitioner argues he will suffer irreparable harm were he redetained without
9  constitutionally compliant notice and hearing, in violation of his due process rights.  (*Id*. at 25.)
10 In opposition, Respondents argue the "mere fact that [Petitioner] could be redetained does not
11 itself satisfy his burden of proving a likelihood of irreparable injury."  (ECF No. 13 at 11.)
12 Respondents further argue Petitioner cannot show irreparable harm because he cannot point to
13 any evidence in his individual case — aside from references to other *Zepeda Rivas* class members
14 who have been detained — that suggests Petitioner will be redetained.  (*Id.* at 12.)
15     The Court finds Petitioner will suffer irreparable harm in the absence of preliminary
16 injunctive relief.  Petitioner has been out of custody for five years, during which time Petitioner
17 appears to have made meaningful connections with his community.  (*Id.* at 18.)  Here, Petitioner
18 is the sole caretaker for his 14 -year-old United States citizen daughter and elderly mother.  (*Id.* at
19 14.)  If Petitioner were redetained, his family would be evicted from his home, and his daughter
20 would be put into foster care.  (*Id.*)  The Ninth Circuit has recognized in "concrete terms the
21 irreparable harms imposed on anyone subject to immigration detention . . . [including] the
22 economic burdens imposed on detainees and their families as a result of detention, and the
23 collateral harms to children of detainees whose parents are detained."  *Hernandez v. Sessions*, 872
24 F.3d 976, 995 (9th Cir. 2017).
25     Despite being released, Petitioner has reason to believe he will be redetained without the
26 opportunity to be heard by a neutral adjudicator on whether redetention is warranted.  Petitioner
27 contends, and Respondents did not dispute, he has attempted to receive assurances that he will not
28 be redetained, without notice and a hearing, to no avail.  This violation of Petitioner's due process

rights is sufficient to satisfy the irreparable harm requirement. *Doe*, 2025 WL 691664, at *6.

       *iii.*   *Balance of Equities and Public Interest*

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).

The Court finds the balance of equities and public interest weighs in Petitioner's favor given that the Court has found that Petitioner has a strong likelihood of success on the merits based on his constitutional claims, Petitioner's irreparable harm and Respondents' lack of harm.

In sum, based on the foregoing, the Court grants a preliminary injunction, enjoining Respondents from arresting, detaining, or removing Petitioner without notice and a hearing before a neutral adjudicator,[2] in which Respondents shall bear the burden of demonstrating a material change of circumstances justifies his redetention.[3]

### IV. CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that a preliminary injunction is GRANTED. Respondents are enjoined from arresting, detaining, or removing Petitioner without notice and a hearing before a neutral adjudicator to determine whether a material change of circumstances justifies his redetention.

//

//

---

[2] Based on Petitioner's request, the Court orders the hearing to occur before a neutral adjudicator. However, the Court expresses serious doubt as to whether the use of Immigration Officers to make factual findings and determinations comports with due process. *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1049 (9th Cir. 2001), abrogated on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006).

[3] The parties dispute the burden of proof applicable at a hearing. The Ninth Circuit has repeatedly held that due process requires the government to prove by clear and convincing evidence that a noncitizen facing detention is a flight risk or danger to the community. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199 (9th Cir. 2022) (holding general principles of due process require that the clear and convincing evidence standard of proof apply in bond hearings, reasoning that a detained person's liberty interest is substantial).

IT IS SO ORDERED.

Date: October 10, 2025

                                              TROY L. NUNLEY
                                              CHIEF UNITED STATES DISTRICT JUDGE