UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ASIF MASOOM QAZI,

Petitioner,

v.

SERGIO ALBARRAN, et al.,

Respondents.

Case No. 2:25-cv-2791 TLN CSK

FINDINGS AND RECOMMENDATIONS

Petitioner Asif Masoom Qazi, a noncitizen proceeding through counsel, filed a verified petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging his potential future re-detention by U.S. Immigration and Customs Enforcement ("ICE"). (ECF No. 1.) Respondents' motion to dismiss is before the Court. For the following reasons, this Court recommends that respondents' motion to dismiss be granted, and the habeas petition be dismissed without prejudice.

## I. FACTUAL BACKGROUND[1]

Petitioner is a native and citizen of Bangladesh who arrived in the United States when he was six years old. (ECF No. 1 at 8.) In November 2016, petitioner was arrested and detained

[1] Petitioner filed a verified habeas petition. (ECF No. 1 at 25.) A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." L. v. Lamarque, 351 F.3d 919, 924 (9th Cir. 2003) (citing McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)). Petitioner also provided his own declaration. (ECF No. 1-3.)

after a traffic stop. (ECF No. 1 at 9.) On December 15, 2016, as soon as petitioner was released pre-trial, ICE detained petitioner and placed him in removal proceedings under Immigration and Naturalization Act ("INA") § 237(a)(1)(B) (8 U.S.C. § 1227(a)(1)(B)). (Id.; ECF No. 13-1 at 7 (Notice to Appear).) Petitioner was charged with being removable from the United States for overstaying his nonimmigrant B2 visitor visa. (Id.) After a few months in detention, petitioner was granted bond on February 2, 2017, and released on February 8, 2017. (ECF No. 1 at 9; ECF No. 13-1 at 95, 101.) The government appealed, and on October 25, 2017, the Board of Immigration Appeals remanded the case to the immigration judge "for further consideration of petitioner's dangerousness in light of arguments advanced on appeal." (ECF No. 13-1 at 99-100.) On March 10, 2017, a different immigration judge found petitioner did not pose a flight risk based on petitioner's "stable residence and employment, and extensive family and community ties." (Id. at 102.) The immigration judge recognized

> DHS's legitimate concerns regarding [petitioner's] arrest and conviction history between 2007 and 2010, followed nearly seven years later by a new arrest on gun charges. However, given that [petitioner] has not been convicted of any charge in that case, and that no forensic evidence (such as fingerprints or DNA) contradicts his sworn statement that he was unaware of the gun's presence in the engine compartment of the car he had purchased at auction earlier that year, the Court will for the time being accept [petitioner's] testimony as credible and find that his release would not pose a danger to the community. This decision is based on his seven years free from convictions, his steady employment, and his evident focus on his daughter's well-being and support.

(Id.) The immigration judge affirmed petitioner's release on $10,000 bond. (Id.)

In early 2020, ICE re-arrested petitioner and detained him at the Mesa Verde Detention Center. (ECF No. 1 at 10; ECF No. 13-1 at 4.) A group of ICE detainees at the Mesa Verde Detention Center and the Yuba County Jail filed a proposed habeas class action challenging the conditions of their confinement. Zepeda Rivas v. Jennings, 445 F. Supp. 3d 36, 38 (N.D. Cal. 2020). On March 31, 2020, an immigration judge denied petitioner's bond request, finding he constituted a danger. (ECF No. 13-1 at 104.) On April 23, 2020, an immigration judge again denied petitioner's bond request, finding petitioner failed to show he was not a danger. (Id. at 106.) On August 14, 2020, as a Zepeda Rivas class member, petitioner's bail request was granted

by the district court. (ECF No. 1 at 10 (citing Zepeda Rivas, 445 F. Supp. 3d at 40); ECF No. 13-1 at 108.) Petitioner was released from detention on August 17, 2020, following an individualized assessment of his flight risk and danger to the community. (Id.) The settlement agreement in Zepeda Rivas, which took effect on June 9, 2022, provided that for three years following the effective date of the agreement, ICE could only re-detain a released class member if the individual posed a threat to public or national security, or posed a flight risk. (ECF No. 1 at 10, 11.)

Following petitioner's January 11, 2021 arrest, the government moved to terminate petitioner's bail under Zepeda Rivas, and on February 17, 2021, the district court terminated petitioner's bail for violating the conditions of his release. (ECF No. 13-1 at 110.) The district court did not address petitioner's risk of flight or danger to the community, and did not remand petitioner to ICE custody. (Id.) ICE did not attempt to re-detain petitioner after his bail was revoked. (ECF No. 1-3 at 4.) In May 2021, the charges were dismissed; ICE did not seek to re-detain petitioner at this time. (Id.)

On July 18, 2023, petitioner was again taken into ICE custody. (ECF No. 13-1 at 5, 114.) After discussions with the U.S. Attorney's Office ("USAO"), petitioner was released "due to his new medical conditions;" he had asthma and used a CPAP, which would subject petitioner to a significant risk of COVID-19 infection, and the USAO was concerned that petitioner's last arrest was two years ago, and petitioner had been compliant since release from that arrest. (ECF No. 13-1 at 114.)

At some point after August 16, 2020, ICE enrolled petitioner in the Intensive Supervision Appearance Program ("ISAP") and placed him on an ankle monitor for electronic GPS monitoring.[2] (Id. at 10.) Petitioner has complied with all ISAP requirements since. (ECF No. 1 at 11; ECF No. 1-3 at 4.) Respondents do not dispute petitioner's compliance. (ECF No. 21.)

---

[2] Petitioner declares that in or around May 2021, ICE enrolled him in ISAP. (ECF No. 1 at 10; ECF No. 1-3 at 4.) The deportation officer declares that petitioner was "released from custody on August 17, 2020, and placed on the [ISAP]." (ECF No. 13-1 at 4.) The officer's statement does not refer to an exhibit, the list of exhibits does not refer to an ISAP enrollment (id. at 2), and the Form I-213 does not reflect the date petitioner was enrolled in ISAP (id. at 112-14).

Petitioner was scheduled for an in-person check-in appointment at ICE's field office in Sacramento on October 3, 2025, at 9:30 a.m.[3] (ECF No. 1 at 13.) Fearing imminent re-arrest and re-detention by ICE at that check-in, petitioner filed the instant petition. (Id.)

Petitioner has a criminal history, but respondents do not contend petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c). (See ECF No. 21.) On April 14, 2008, petitioner, age 18, pled guilty to one count of second degree robbery in violation of California Penal Code § 211, a felony. (ECF No. 13-1 at 31.) Petitioner was sentenced to 364 days in jail, five years' probation, restitution, and fines. (Id. at 33-36.) On March 1, 2011, petitioner, now over 21 years old, pled guilty to accessory to a felony, also a felony, in violation of California Penal Code § 32, and was sentenced to one day in jail, five years' probation, restitution, and fines. (ECF No. 13-1 at 44-49.) On March 28, 2019, petitioner pled no contest to possession of armor-piercing ammunition in violation of California Penal Code § 30315, and sentenced to 179 days in jail, three years of formal probation, and fees. (Id. at 3, 63-71.)

On May 5, 2019, petitioner was arrested for battery following a dispute with his ex-wife. (ECF No. 1 at 10; ECF No. 13-1 at 73-76.) On January 11, 2021, petitioner was arrested for inflicting injury on a spouse in violation of California Penal Code § 273.5(a); possession of firearm by a felon, in violation of California Penal Code § 29800(a)(1); probation violation, in violation of California Penal Code § 1203.2; and "vehicle tow/driver arrested," in violation of California Vehicle Code § 22651(h). (ECF No. 13-1 at 4, 78-84.) In May 2021, the charges were dismissed, and petitioner was held responsible for a probation violation only. (ECF No. 1-3 at 4.)

In 2024, Petitioner completed an apprenticeship and is a certified Field Ironworker and Reinforcing Metal Worker. (ECF No. 1 at 12.) He is gainfully employed as a Rigger and Signal Person, Forklift Operator, and Supervisor. (Id.) Petitioner has full custody of his 14-year old United States citizen daughter, who suffers from ongoing bouts of severe chest pain that requires emergency care. (Id.) Petitioner is also the only caretaker of his elderly, United States

[3] In his opposition, petitioner's counsel notes that petitioner checks in with ICE on a monthly basis, and was scheduled for a check-in on December 26, 2025, and a home visit check-in on February 5, 2026. (ECF No. 26 at 4 n.1.)

citizen mother. (Id.) Petitioner has a pending I-130 family visa application before the United States Citizenship and Immigration Services ("USCIS") based on his relationship with his mother. (ECF No. 2 at 13.)

It is undisputed that petitioner has not been physically detained in ICE custody during the pendency of this habeas proceeding.

## II. PROCEDURAL BACKGROUND

On September 26, 2025, petitioner filed his petition for writ of habeas corpus and motion for temporary restraining order. (ECF Nos. 1, 2.) On September 29, 2025, the district court granted petitioner's motion, restrained and enjoined respondents from re-detaining petitioner without notice and a hearing where the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of flight, and ordered respondents to show cause why a preliminary injunction should not issue. (ECF No. 7.) On October 1, 2025, respondents timely filed an opposition to petitioner's request for a preliminary injunction. (ECF No. 13.) On October 10, 2026, the district court granted a preliminary injunction enjoining respondents from arresting, detaining, or removing petitioner without notice and a hearing before a neutral adjudicator to determine whether a material change of circumstances justifies petitioner's re-detention. (ECF No. 15.) On November 18, 2025, the district court referred this matter to the magistrate judge. (ECF No. 16.) On December 9, 2025, as required by this Court's November 25, 2026 order, respondents filed a timely motion to dismiss and an opposition to the habeas petition. (ECF No. 21.) On December 23 2025, petitioner timely filed an opposition to the motion to dismiss and traverse, accompanied by a table of authorities. (ECF Nos. 26, 27.) On January 21, 2026, this Court granted petitioner seven days to file a signed opposition and traverse, which counsel filed the same day. (ECF Nos. 25, 26.) Respondents did not file a reply. Briefing is now complete.

## III. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in

custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

Habeas corpus petitions are subject to summary dismissal pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Court. The provisions of Rule 4, which are applicable to a petition filed pursuant to 28 U.S.C. § 2241, provide in pertinent part: "If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must not dismiss the petition and direct the clerk to notify the petitioner." The Advisory Committee Notes to Rule 4 indicate that the court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to respondents' motion to dismiss, or after an answer to the petition has been filed.

**IV. ANALYSIS**

Petitioner argues that he has a vested liberty interest in his current conditional release, and the Due Process Clause of the Fifth Amendment does not permit the government to detain him without a hearing. (ECF No. 1 at 23-24 (claims one (substantive due process) and two (procedural due process)).) As relief, petitioner asks the Court to exercise jurisdiction over this matter, enjoin respondents from re-detaining petitioner without a pre-deprivation hearing, declare that arresting petitioner absent thirty days' notice and a constitutionally-compliant pre-deprivation hearing where the government has shown by clear and convincing evidence that a material change in circumstance occurred after May 16, 2025, would violate petitioner's due process rights, and award reasonable costs and attorney fees to petitioner. (Id. at 24.)

Respondents move to dismiss the habeas petition as moot because the petition presents no live issue inasmuch as petitioner has not been in ICE custody during the pendency of this action,

petitioner cites no collateral consequences supported by legal authorities, but rather speculates he may be re-detained at some future date during removal proceedings. (ECF No. 21 at 4-5.) Respondents further argue that the Court lacks jurisdiction under 8 U.S.C. §§ 1226(e) and 1252 to review petitioner's claims, and that petitioner's hypothetical re-detention does not violate due process. (Id. at 5-9, 9-12.) Finally, respondents contend that if the Court finds a pre-deprivation hearing is required, the burden should be placed on petitioner, not the government. (Id. at 12-13.)

In opposition, petitioner first argues that there is a live controversy which can be remedied because petitioner remains at risk of arbitrary re-detention by respondents in violation of petitioner's right to due process, and although petitioner is not in physical detention, he is subject to significant restraints on his liberty by virtue of electronic monitoring, and the preliminary injunction does not render the present controversy moot. (ECF No. 26 at 5-8.) Second, petitioner contends that this Court has jurisdiction over petitioner's constitutional claims under 28 U.S.C. § 1331. (Id. at 8-10.) Third, petitioner argues that petitioner is entitled to due process under the Fifth Amendment which precludes his re-detention absent a pre-deprivation hearing where it is determined he poses a flight risk or danger to the community, because all the factors under Mathews v. Eldridge, 424 U.S. 319 (1976), weigh in petitioner's favor. (Id. at 10-19.) Finally, petitioner argues that respondents must bear the burden of proof by clear and convincing evidence at a pre-deprivation hearing before a neutral adjudicator. (Id. at 19.)

**A. Justiciability**

*1. Legal Standards*

Article III of the Constitution requires district courts to adjudicate only actual cases or controversies. See U.S. Const. art. III, § 2, cl. 1; Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990). District courts are not empowered "to issue advisory opinions [or] to declare rights in hypothetical cases." Clark v. City of Seattle, 899 F.3d 802, 808 (9th Cir. 2018) (internal quotation marks and citation omitted). "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004). To establish standing, petitioner "must show (i) that he suffered an injury in fact that is concrete,

particularized, and actual or imminent; (ii) that the injury was likely caused by the [respondents]; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021); Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016) (plaintiff's injury must be "concrete," "real and not abstract.").

"[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant. . . ." Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472 (1982) (internal quotation and citation omitted); see also Bishop Paiute Tribe v. Inyo Cnty., 863 F.3d 1144, 1153 (9th Cir. 2017) ("For a case to be ripe, it must present issues that are definite and concrete, not hypothetical or abstract."). "The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury." City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983) (citation modified). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings[.]" Lewis, 494 U.S. at 477.

Courts apply the related doctrine of ripeness "'to determine whether a case presents a live case or controversy' over which [they] have jurisdiction under Article III." Safer Chemicals., Healthy Fams. v. U.S. Env't Prot. Agency, 943 F.3d 397, 411 (9th Cir. 2019) (quoting Clark, 899 F.3d at 808). The Supreme Court has "noted that ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Reno v. Cath. Soc. Servs., Inc., 509 U.S. 43, 58 n.18 (1993). District courts may decline to exercise jurisdiction for prudential reasons where a case meets the requirements of Article III, but may not exercise jurisdiction where constitutional ripeness is lacking. See Safer Chemicals., Healthy Fams., 943 F.3d at 412; Spokeo, 578 U.S. at 339.

"Constitutional ripeness is often treated under the rubric of standing because ripeness coincides squarely with standing's injury in fact prong." Safer Chemicals, Healthy Fams., 943 F.3d at 411 (alteration omitted) (quoting Clark, 899 F.3d at 809). "To satisfy the constitutional ripeness requirement, a case 'must present issues that are definite and concrete, not hypothetical or abstract.'" Id. (quoting Clark, 899 F.3d at 809). "[A] claim is not ripe for adjudication if it

rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Bova v. City of Medford, 564 F.3d 1093, 1096 (9th Cir. 2009) (quoting Texas v. United States, 523 U.S. 296, 300 (1998)). "That is so because, if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing." Id. (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)).

It is well-established that constitutional standing requirements apply to habeas petitioners. See Munoz v. Rowland, 104 F.3d 1096, 1097-98 (9th Cir. 1997) (applying standing doctrine within habeas context); I.M. v. U.S. Customs & Border Prot., 2022 WL 266703, at *5 (D.D.C. Jan. 28, 2022), aff'd sub nom. I.M. v. United States Customs & Border Prot., 67 F.4th 436 (D.C. Cir. 2023) (same). "For a habeas petition to continue to present a live controversy after the petitioner's release or deportation . . . there must be some remaining 'collateral consequence' that may be redressed by success on the petition." Abdala v. I.N.S., 488 F.3d 1061, 1064 (9th Cir. 2007). "By contrast, where the grounds for habeas relief will not redress collateral consequences, a habeas petition does not continue to present a live controversy once the petitioner is released from custody." Id. "Collateral consequences create concrete legal disadvantages." Alam v. Carter, 843 F. Appx. 953, 954 (9th Cir. 2021) (internal quotation marks omitted).

*2. Discussion*

Respondents' motion to dismiss raises the threshold question of whether petitioner's habeas claim is ripe for decision.[4] Petitioner states that he filed the instant petition because he

---

[4] Although he is not in physical custody, petitioner alleges he is in custody based on the reporting and monitoring requirements imposed through ISAP, and provides authority and facts supporting his theory that the monitoring he is subject to constitutes "custody." (ECF No. 26 at 6 (citing Jones v. Cunningham, 371 U.S. 236, 240 (1963); Ortega v. Bonnar, 415 F. Supp. 3d 963, 967-68 (N.D. Cal. 2019)).) See also Sun v. Santacruz, 2025 WL 2730235, at *3 (C.D. Cal. Aug. 26, 2025) (holding noncitizen who was "presently in immigration custody" on an Order of Supervision "need not seek immediate release of that custody for habeas corpus relief to be available" but rather could "attack her future confinement by ICE" (cleaned up)). Respondents contend that the instant case should be dismissed because petitioner was not in ICE custody at the time the instant petition was filed, and has not been in ICE custody throughout these habeas proceedings. This Court declines to decide the issue of whether petitioner is in custody because this Court finds petitioner's claim is not ripe. See, e.g., Hai Chieu Dam v. Timothy Robbins, No. 2:25-cv-08133 (C.D. Cal. Sept. 16, 2025) (ECF No. 7 at 6 (declining to address whether

feared he would be re-detained at his next ICE check-in on October 3, 2025, he was not detained at that check-in, although by then the district court had granted the temporary restraining order, and it is undisputed that petitioner has not been detained during the pendency of this action. Indeed, in the instant petition, petitioner admits that "at no point in the last five plus years did ICE re-detain [petitioner]." (ECF No. 1 at 14.) This is notable because petitioner was arrested by law enforcement in January 2021 (which did not lead to conviction), and his subsequent bail was revoked, yet petitioner was not re-detained. (Id.) Instead, petitioner was placed on ISAP supervision and subsequently returned to ISAP monitoring. In addition, petitioner had a check-in on May 16, 2025, where he was also not re-detained. (Id.) Petitioner provides no evidence that petitioner faces an imminent threat of re-detention; rather, he speculates that he is at risk of re-detention based on "DHS's current aggressive enforcement campaign, respondents have been targeting individuals for arrest and detention at DHS offices, ISAP contractor offices, courthouses, hospitals and homes," and respondents' constant access to petitioner's GPS location through his ankle monitor that allows ICE to target petitioner for arrest anywhere. (ECF No. 26 at 7-8 n.1.) Such speculation is insufficient to demonstrate petitioner faces an imminent threat of actual injury.

District "[c]ourts have found habeas claims to be unripe when petitioners sought habeas relief prior to an ICE check-in, were not detained at that check-in, then failed to articulate the likelihood of an imminent threat after the appointment." Thai v. Lyons, 2026 WL 1303056, at *3 (N.D. Cal. May 12, 2026) (collecting cases). This Court is persuaded that the instant habeas petition should be dismissed because petitioner seeks prospective relief, and his petition alleged no collateral consequences sufficient to present a live controversy in light of his previous release from re-detention in August 2020. See Abdala, 488 F.3d at 1064-65; J.P. v. Santacruz, 2025 WL 2998305, at *2 (C.D. Cal. Oct. 24, 2025) (dismissing a habeas petition after the ICE check-in giving rise to the petition had passed and petitioner only maintained a challenge to speculative detention at some future appointment). While it is possible that petitioner may be re-detained in

---

petitioner was "in custody" because petition for an injunction barring re-detainment was not ripe).

the future, petitioner's alleged threat of future injury is too speculative and hypothetical, and therefore his petition seeking only prospective relief should be dismissed. See, e.g., Thai, 2026 WL 1303056, at *3; J.P. v. Santacruz, 2025 WL 2998305, at *2 (C.D. Cal. Oct. 24, 2025) (dismissing a habeas petition after the ICE check-in giving rise to the petition had passed and petitioner only maintained a challenge to speculative detention at some future appointment).

Petitioner urges this Court to exercise jurisdiction, citing Ortega v. Bonnar, 415 F. Supp. 3d 963, 967-68 (N.D. Cal. 2019). This Court acknowledges that some district courts have found prospective relief requests to be ripe in cases where the government refused to provide assurances regarding future detention. See Ortega v. Bonnar, 415 F. Supp. 3d at 967-68 (granting prospective relief after the government asserted that it had "unreviewable discretionary authority to re-arrest Ortega in the event of material changed circumstances" and that "material changed circumstances already exist[ed]."); see also T.P.S. v. Kaiser, 2026 WL 622214, at *2 (E.D. Cal. Mar. 5, 2026) (collecting cases where courts have granted prospective relief in the same context). In the instant case, there has been no material change of circumstances. Further, as the court stated in T.P.S., "[t]his court must ensure its own jurisdiction." T.P.S., 2026 WL 622214, at *3.

In addition, this case is distinguishable from Ortega v. Bonnar, 415 F. Supp. 3d 963. Here, although respondents were unwilling to grant assurance that petitioner will not be re-detained (see ECF No. 15 at 5), respondents have not stated that they intend to re-detain petitioner in the future. See Alvarenga Matute v. Wofford, 2025 WL 2996577, at *3 (E.D. Cal. Oct. 24, 2025) (respondents' signal that they intended to re-detain the petitioner if the court case was dismissed "is a collateral consequence that keeps this case live."). Petitioner's arguments that respondents will be able to re-arrest and re-detain him, while possible, do not demonstrate the threat is imminent. Petitioner has been on supervised release for over five years, and despite multiple opportunities where he could have been re-detained, immigration officials apparently opted to leave him on ISAP rather than detain him. Petitioner points to no factors that would prompt his re-detention rather than his continuation under ISAP. For example, petitioner does not argue that petitioner's criminal history is likely to subject him to imminent re-detention, and respondents do not contend that petitioner is subject to mandatory detention under 8 U.S.C.

§ 1226(c) based on petitioner's criminal history. Of course, it is possible that at some point in the future petitioner could be re-detained. But "[t]his Court is bound by Constitutional restrictions to adjudicate ripe claims." T.P.S., 2026 WL 622214, at *4. Petitioner fails to demonstrate the threat of injury is imminent.

Therefore, this Court is persuaded that petitioner fails to identify collateral consequences that present a live controversy, rendering the instant petition not ripe.

The mootness doctrine includes an exception for injuries that are "capable of repetition yet evading review." Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 546 (1976). That exception is met when: (1) the "duration of the challenged conduct is too brief ever to be fully litigated prior to its cessation"; and (2) there is a reasonable probability that the petitioner will again be subject to the challenged activity. Mitchell v. Dupnik, 75 F.3d 517, 527-528 (9th Cir. 1996).

While petitioner's confinement in immigration custody is capable of repetition, it is not clear that another detention will occur. Indeed, he has not been re-detained for over five years. Even if there is a reasonable probability that petitioner will again be subject to ICE custody, nothing prevents him from filing a new petition seeking judicial review when his claim is ripe. And in the immigration context, the duration of detention is not "too brief" to allow a claim to be fully litigated.

For all these reasons, respondents' motion to dismiss the petition should be granted, and this action should be dismissed without prejudice. Because this Court finds this action is not ripe, the Court need not address respondents' remaining arguments. (ECF No. 21 at 5-12.)

## V. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondents' motion to dismiss (ECF No. 21) be GRANTED.
2. The petition for writ of habeas corpus be DISMISSED WITHOUT PREJUDICE.
3. The Clerk of Court be directed to enter judgment for respondents and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen** days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven** days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 15, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/qazi2791.157.2241.imm